**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

------------------------------------------------------------------------------

| | |
|---|---|
| CUSHMAN & WAKEFIELD OF PENNSYLVANIA, LLC, | : Civil Action No.: |
| | : |
| Plaintiff, | : |
| v. | : **COMPLAINT** |
| | : |
| ILLINOIS NATIONAL INSURANCE COMPANY, | : |
| | : |
| Defendant. | : **JURY TRIAL DEMANDED** |

------------------------------------------------------------------------------

Cushman & Wakefield of Pennsylvania, LLC ("Cushman"), by and through its undersigned attorneys, as and for its Complaint against Illinois National Insurance Company ("Illinois National"), alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for declaratory relief and damages for breach of contract and bad faith arising out of Illinois National's breach of its obligations under the professional liability policy that Illinois National sold to Cushman.

2. Illinois National has violated its obligations under its Excess Insurance Policy by belatedly reversing its coverage position and refusing to fund the settlement of a covered Claim under the policy. Moreover, Illinois National's attempt to force Cushman into an unreasonable settlement and thereby avoid its obligation to defend Cushman with respect to that covered Claim constitutes bad faith. Illinois National's unreasonable conduct and hostility come in the wake of Cushman's success in a separate $48 million coverage litigation against Illinois National in the U.S. District Court for the Northern District of Illinois, in which the court found Illinois

National to be liable to Cushman for the full $23 million of its policy limits. The dispute that forms the substance of this Complaint involves the same insurance policies, as well as nearly identical bad faith conduct by Illinois National.

3.      In 2013, Cushman first notified Illinois National that it had been sued and was facing liability for claims that were styled as, among other things, fraudulent misrepresentation (the "Berger Action"). Illinois National promptly acknowledged receipt of the claim, and assured Cushman that coverage was available and that a defense would be provided. Illinois National informed Cushman that it would continue to fund a defense "until a final adjudication adverse to [Cushman]" established that a fraud had occurred and was "the sole cause of damages." Illinois National also reminded Cushman that under the applicable policies, there would be no coverage if there was a "finding" that Cushman acted fraudulently.

4.      As the Berger Action dragged on, Illinois National made no secret of its frustration over the cost of having to pay Cushman's growing defense costs. After four-and-a-half years of litigation, with a motion for summary judgment pending and settlement negotiations beginning in earnest, Illinois National suddenly reversed its coverage position. Faced with the prospect of funding a possible settlement on top of the defense costs it had already paid, Illinois National issued a letter informing Cushman that, contrary to its initial position, there would be no coverage for a settlement *irrespective* of any "finding" that Cushman acted fraudulently. Without Illinois National's commitment to fully fund a settlement, the 2017 settlement negotiations fell through.

5.      Cushman's successful summary judgment motion in the Berger Action eliminated nearly half of Cushman's potential liability, but Illinois National's complaints about the growing defense costs persisted, becoming more pointed and more frequent. The court's ruling sparked a

second round of settlement negotiations in August of 2018, and Cushman again demanded that Illinois National fulfill its obligations and fully fund any settlement. After repeatedly waffling on the amount it would contribute, Illinois National finally made a concrete offer to fund a settlement, but only up to an amount that was below its remaining policy limits and less than the full amount of the proposed settlement. Illinois National agreed to hold that offer open until further notice. Unfortunately, again due in part to Illinois National's refusal to fully fund the settlement up to its policy limits, the second round of settlement negotiations was unsuccessful.

6. Frustrated with the parties' failure to settle, the court ordered Cushman and the underlying plaintiffs to engage in a mediation before a magistrate judge. Relying on Illinois National's assurance that it would contribute the amount it previously promised, Cushman offered that amount to the plaintiffs ahead of the scheduled mediation. That same day, Illinois National revoked its offer. It also, for the first time, asserted that it would begin deducting Cushman's ongoing defense costs from the promised settlement contribution, significantly and immediately reducing that amount, and further eroding it as the defense continues. Indeed, Illinois National's claims handler made no secret that this new proposal of a "wasting asset" settlement contribution was an attempt to coerce Cushman to settle the claim, thereby terminating Illinois National's obligation to pay those costs.

7. Illinois National's unwarranted change of position, and its belated refusal to honor its obligation under the Policies, as well as its attempt to strong-arm Cushman into a settlement, irrespective of the reasonableness of that settlement, constitute a breach of the Policies and an impermissible attempt by Illinois National to place its own interests above those of its insured. As a result of Illinois National's breach of contract and bad faith claims handling, Cushman has suffered and will continue to suffer significant damage in the underlying action. In this action,

3

Cushman seeks both to recover those damages and a declaration of its right to coverage under the Illinois National Policy for the Berger Action.

## THE PARTIES

8.      Plaintiff Cushman is a limited liability company organized under the laws of Pennsylvania with its principal place of business in Pennsylvania.  Cushman is a wholly owned subsidiary of Cushman and Wakefield, Inc., a New York corporation with its principal place of business in New York.

9.      Defendant Illinois National is an insurance company incorporated under the laws of Illinois, with its principal place of business in Illinois.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties to this action and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

11.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

I.      **CUSHMAN'S REAL ESTATE SERVICES PROFESSIONAL LIABILITY INSURANCE COVERAGE**

12.      In consideration of the payment of substantial premiums, Illinois National issued Excess Insurance Policy No. 0230588092 (the "Illinois National Policy") to Cushman, for the policy period June 30, 2012 to June 30, 2013.  The Illinois National Policy has a limit of liability of $15,000,000.

13.      The Illinois National Policy provides the first layer of excess coverage over the Real Estate Services Professional Liability Insurance Policy No. 437-1-12-PL01 issued by Nottingham Indemnity, Inc. (the "Nottingham Policy," and together with the Illinois National

Policy, the "Policies"). The Nottingham Policy provides $2,000,000 of coverage above a $50,000 retention. Unless otherwise indicated, the Illinois National Policy "follows form" to the Nottingham Policy, meaning that, except as expressly provided for, the Illinois National Policy provides coverage to Cushman "in accordance with the same terms, conditions, exclusions and limitations" of the Nottingham Policy. *See* Illinois National Policy at § I.

14.     The Nottingham Policy Insuring Agreement provides:

> The Company will pay on behalf of the Insured all sums in excess of the Deductible which the Insured shall become legally obligated to pay as Damages and Claims Expenses . . . for claims and incidents first made against the Insured during the Policy Period . . . as a result of a Wrongful Act of the Insured (or of any other person for whose acts the Insured is legally responsible) . . . .

Nottingham Policy at Claims Made Coverage § 1.

15.     Cushman is a Named Insured under the Policies, as set forth in Endorsement 1 to the Nottingham Policy.

16.     "Claim" is defined to mean "[a] written demand for money or services naming any Insured and alleging a Wrongful Act . . . to which this policy applies."

17.     "Wrongful Act" is defined as "[a]ny actual or alleged act, error, or omission, breach of duty or event committed in connection with the conduct of the Insured's Professional Services . . . ."

18.     "Professional Services" is defined to include "[a]ll services rendered or to be rendered by the Insured for or on behalf of third parties or that inure to the benefit of the insured."

19.     "Damages" is defined in relevant part to include "[a]ny compensatory sum which an Insured is legally obligated to pay for any Claim, including (a) settlements reached through Alternative Dispute Resolution Procedures . . . ."

5

20.    "Claims Expenses" are defined to include "[a]ll expenses incurred by the Company or by the Insured with the Company's consent in the investigation, negotiation, arbitration, defense and appeal of any Suit or Claims for Damages . . . ."

21.    There is no dispute that the Berger Action constitutes a Claim as defined in the Policies, and that the allegations in the Berger Action involve Cushman's Professional Services as defined in the Policies.

22.    The Nottingham Policy contains an exclusion that precludes coverage for:

> any Claim alleging intentional wrongdoing, fraud, dishonesty, or criminal or malicious act of an Insured.  However, the Insured will be provided with a defense under the terms of this Policy for such Claims until a final adjudication adverse to the Insured shall establish such act occurred and was the sole cause of damages.  No fact pertaining to an Insured shall be imputed to any other Insured for the purpose of determining the applicability of this exclusion.

*Id.* at Exclusions § 1 ("Exclusion 1").

23.    There has been no final adjudication in the Berger Action, which remains pending before the U.S. District Court for the Eastern District of Pennsylvania.

24.    The Illinois National Policy contains a Dispute Resolution Process provision that requires Cushman and Illinois National to submit either to non-binding mediation or arbitration in the event of a coverage dispute.  If the parties choose mediation, the Illinois National Policy imposes a 120-day "cooling off" period before either party can initiate litigation.

25.    Upon information and belief, both parties agree and understand that the mediations attended by Cushman, Illinois National, and the Berger Action plaintiffs occurring in September of 2017, August of 2018, and November of 2018 pertained to the dispute between Cushman and the Berger Action plaintiffs, and therefore did not trigger the 120 day cooling off period.

26.     A mediation between Cushman and Illinois National pertaining to this coverage dispute took place on March 19, 2019, and was unsuccessful.

27.     Upon information and belief, both Cushman and Illinois National agree and understand that the March 19, 2019 mediation qualifies as the alternative dispute resolution process required by the Illinois National Policy, and that the 120-day cooling off period is calculated from that date.

## II.     THE BERGER ACTION

28.     In December of 2012, Cushman was sued by Mr. Berish Berger ("Berger"), Kilbride Investments Limited ("Kilbride"), Busystore Limited in Liquidation ("Busystore"), Towerstates Limited ("Towerstates"), Bergfeld Co. Limited ("Bergfeld"), and Ardenlink Limited ("Ardenlink," and together with Berger, Kilbride, Busystore, Towerstates, and Bergfeld, the "Underlying Plaintiffs") in the Berger Action.  The Underlying Plaintiffs amended their complaint in February of 2013.  In the 2013 complaint (the "Underlying Complaint"), which is the operative complaint, the Underlying Plaintiffs asserted a cause of action for fraudulent misrepresentation against Cushman arising out of a real estate appraisal that Cushman generated in 2006.  The Underlying Plaintiffs also asserted causes of action against two law firms for conspiracy to defraud, and for aiding and abetting fraud.  The Berger Action is currently pending before Judge Jan E. DuBois in U.S. District Court for the Eastern District of Pennsylvania.

29.     The Berger Action is the fifth in a series of lawsuits arising out of the same facts that form the basis of the Underlying Complaint, including two consolidated cases in the United States District Court for the Eastern District of Pennsylvania captioned *Berger et al. v. Weinstein et al.*, Case No. 2:08-cv-04059 and *Berger et al. v. Zeghibe et al.*, Case No. 2:08-cv-05861 (the "Weinstein Actions") that proceeded to trial.  Cushman was not a party to the Weinstein Actions, and in August 2010, a judgment for $33 million was entered against, *inter alia*, Ravinder Chawla

("Chawla") and Eli Weinstein ("Weinstein") in favor of the Underlying Plaintiffs. The Underlying Complaint was filed over two years after judgment was entered in the Weinstein Actions.

30.     In the Underlying Complaint, the Underlying Plaintiffs allege that they were "duped" into investing $27,000,000 in a "fictitious development project called 'River City' in Philadelphia, Pennsylvania." The projects' promoters, including Chawla and Richard Zeghibe ("Zeghibe"), contracted to purchase the undeveloped River City site for $32.5 million by means of a special purpose entity called JFK Blvd. Acquisition Partners GP, LLC ("JFK"). The contract was negotiated and executed by Charles Naselsky ("Naselsky"), a real estate transactional attorney and a partner at Cozen O'Connor, and later at Blank Rome.

31.     The Underlying Plaintiffs allege the purchase of River City was part of a scheme by Chawla and Zeghibe to flip the property and make a "$70 million profit with little or no investment." They further allege that after contracting for the property through JFK, Chawla executed a "sham contract" to purchase the property from JFK for $50 million in order to make River City appear to be worth more than $32.5 million. Chawla and Zeghibe also hired an architect to create development plans for the River City site. The architect's plans included eight very tall, thin towers, each well over 125 feet.

32.     The Underlying Plaintiffs allege that Chawla and Zeghibe then contracted to sell the property to Weinstein for $62.5 million, and that Chawla and Weinstein began to look for investors to fund the development of the River City site.

33.     The Underlying Plaintiffs allege that Cushman was retained to draft a real estate appraisal of the River City site. For the purposes of generating the appraisal, the Underlying Plaintiffs allege that Cushman was provided with, *inter alia*, the sham $50 million contract and

the architect's design plans. Cushman valued the River City site at $77 million, and stated that the appraisal had been "prepared in accordance with the Uniform Standards of Professional Appraisal Practice (USPAP)." Notably, the Underlying Plaintiffs do not allege that Cushman was aware that the $50 million contract was a sham, nor do the Underlying Plaintiffs assert causes of action against Cushman for either conspiracy to defraud or aiding and abetting fraud. Rather, the Underlying Plaintiffs assert that Cushman was on the receiving end of numerous lies by Chawla and Naselsky as Naselsky attempted to "'work his magic' to get [Cushman] to increase the draft value to closer to $100 million."

34.     The Underlying Plaintiffs allege that the appraisal contained "numerous undisclosed extraordinary assumptions and hypothetical conditions," and therefore did not comply with USPAP. Cushman allegedly failed to meet the "minimum standards of care" when evaluating the legal permissibility, physical possibility, and financial feasibility as required by USPAP.

35.     The Underlying Plaintiffs allege that Cushman failed to properly analyze the sham contract and made no effort to verify its legitimacy. Cushman also allegedly failed to take into account a then-pending, and ultimately passed, zoning ordinance imposing a 125 foot height limit on two of the five parcels of the River City site. Moreover, Cushman's conclusion that River City was physically possible is alleged to be "nothing more than a reckless guess," and Cushman's alleged failure to perform a detailed financial analysis was "particularly reckless."

36.     The Underlying Plaintiffs assert three specific misrepresentations in Cushman's appraisal: (1) there was no building height limitation applicable to the River City site; (2) the appraisal complied with USPAP; (3) the River City site had a valuation of $77 million.

37. The Underlying Plaintiffs allege that they were induced to invest in the River City project based in part upon the misrepresentations in Cushman's appraisal, and suffered damages as a result.

38. Cushman filed a motion for summary judgment on June 23, 2017. While Cushman's motion was pending, Cushman and the Underlying Plaintiffs began settlement discussions.

39. As of the filing of this Complaint, Cushman has been unable to settle with the Underlying Plaintiffs and the Berger Action remains pending. If a settlement with the Underlying Plaintiffs cannot be reached, the Berger Action will proceed to trial, with a trial date likely to be scheduled for Fall 2019.

### III. CUSHMAN'S CLAIM FOR COVERAGE FOR THE BERGER ACTION

#### A. Illinois National Issues, then Reverses, its Coverage Position in Response to Being Informed of the Potential for Settlement

40. Cushman provided timely notice of the Berger Action to Illinois National, and in a letter dated February 8, 2013 (the "2013 Letter"), Illinois National acknowledged receipt of the Claim and provided Cushman with its original coverage position. In the 2013 Letter, Illinois National noted that Exclusion 1 barred coverage for claims alleging fraud, but assured Cushman that "a defense will be provided under the terms of the Policy for such claims *until a final adjudication adverse to the Insured* shall establish such act occurred and was the sole cause of damages." (emphasis added). Illinois National stated that, pursuant to the Policies, "there would be no coverage for a *finding* that Cushman acted fraudulently."

41. Cushman relied on Illinois National's coverage position as it continued to litigate the Berger Action for nearly four-and-a-half years. Cushman operated in accordance with

Illinois National's position that Cushman was entitled to coverage under the Policies for the Berger Action as long as there was no finding that Cushman acted fraudulently.

42.     After filing its summary judgment motion in April of 2017, Cushman notified Illinois National of the potential for settlement at an upcoming mediation scheduled for September, and requested coverage for any settlement pursuant to the terms of the Policies.

43.     In September 2017, Illinois National issued a second letter (the "2017 letter"), reversing its coverage position and asserting that there would be no coverage *regardless* of whether there was a finding that Cushman acted fraudulently.  Instead, Illinois National stated for the first time that the Policy only obligated Illinois National to fund Cushman's defense and that Illinois National was not liable for a settlement between Cushman and the Underlying Plaintiffs in any amount.

**B.      Illinois National's Inconsistent Coverage Positions and Contribution Offers Thwart Settlement Negotiations Between Cushman and the Underlying Plaintiffs**

44.     Ahead of the upcoming mediation, and as a result of further discussions with Cushman, Illinois National eventually did make an offer to contribute to a settlement.  Illinois National's offer was no more than a fraction of the sum available to Cushman under the Illinois National Policy.

45.     Cushman and the Underlying Plaintiffs attended a mediation in September of 2017 (the "September 2017 Mediation"), at which Illinois National was present.  In part because of Illinois National's refusal to fully fund a settlement, this September 2017 Mediation was unsuccessful as between Cushman and the Underlying Plaintiffs, though the Underlying Plaintiffs did settle with one of the defendant law firms.

46.     On April 25, 2018, Judge Du Bois issued an order (the "April 2018 Order") granting Cushman's motion in part and dismissing Kilbride from the suit.  The court found that

the Underlying Plaintiffs had failed to raise a genuine issue of material fact as to whether

Kilbride relied on Cushman's appraisal before investing $12 million in the River City Project.

As a result, the Underlying Plaintiffs' recoverable damages were reduced from $27 million to

$15 million.

47.     After issuing the April 2018 Order, Judge Du Bois then ordered Cushman and the

Underlying Plaintiffs to re-enter settlement negotiations and attend a mediation.  Cushman and

the Underlying Plaintiffs were scheduled to attend the court-ordered mediation on August 7,

2018 (the "August 2018 Mediation").

48.     Ahead of the mediation, Cushman again demanded that Illinois National meet its

obligations under the Policies by agreeing to fully fund any settlement between Cushman and the

Underlying Plaintiffs.  Illinois National refused.  Instead, on August 2, 2018, Illinois National

offered to fund only 50% of any settlement up to a capped amount that fell far short of the likely

settlement amount.

49.     On August 6, 2018, Cushman asked Illinois National to reconsider its offer to

fund only 50%.  Cushman warned Illinois National that if Cushman was unable to settle with the

Underlying Plaintiffs because of Illinois National's refusal to fully fund, Cushman intended to

enforce its rights under the Policies and at equity under the law, and to hold Illinois National

liable for all amounts above Illinois National's limits that Cushman might become obligated to

pay to settle the Berger Action at a later date.

50.     On August 6, 2018, Illinois National modified its offer slightly, and promised to

contribute an amount equal to 50% of the previously-proposed capped amount, rather than 50%

up to the cap.  Illinois National continued to refuse to fully fund a settlement.

51. In addition, in both its August 2 and August 6 offers, Illinois National insisted for the first time that any funds it paid toward a settlement with the Underlying Plaintiffs were subject to a right of recoupment. Nothing in the language of the Policies gives Illinois National the right to recoup funds paid toward a settlement.

52. The parties attended the August 2018 Mediation, at which Illinois National was also present. In part due to Illinois National's refusal to fully fund a settlement, the August 2018 mediation was unsuccessful as between Cushman and the Underlying Plaintiffs, though the Underlying Plaintiffs did settle with the second of the two defendant law firms.

53. After the August 7, 2018 Mediation failed to result in a settlement between Cushman and the Underlying Plaintiffs, Illinois National agreed to hold open its partial-funding offer "until further notice."

**C.     Without Any Prior Notice, Illinois National Revokes its Settlement Contribution Offer and Attempts to Force a Settlement**

54. On October 4, 2018, the court in the Berger Action ordered Cushman and the Underlying Plaintiffs to participate in a further mediation and settlement conference on November 13, 2018 (the "November 2018 Mediation"), at which Illinois National was present. Like the September 2017 and August 2018 Mediations, the November 2018 Mediation was unsuccessful, and the Berger Action remains pending in the Eastern District of Pennsylvania.

55. In advance of the November 13, 2018 Mediation, and based on Illinois National's previous offer to contribute a certain amount, Cushman offered that amount to the Underlying Plaintiffs.

56. Cushman provided Illinois National with notice of the November 2018 Mediation and asked Illinois National to participate. In response, Illinois National complained about the ongoing defense expenses and the trial budget that it had received from underlying defense

counsel, and "revoke[d] [its] proposal" to "fund a settlement up to [the previously-offered amount]."

57.     Two weeks later, on October 19, Illinois National made yet another offer, putting the previously-offered amount back on the table, but this time with the condition that it was a wasting asset and would be reduced by "the amount that Illinois National has (and/or will) reimburse Cushman for the defense of this matter from August 8, 2018 through November 13, 2018 or whenever a settlement in principal is reached, whichever comes first."

58.     Upon information and belief, Illinois National's offer of a "wasting asset" settlement contribution arose out of Illinois National's reluctance to continue paying defense costs per its obligations under the Policy, and to force Cushman into a settlement regardless of its reasonableness.

59.     Indeed, Illinois National's claims representative, who previously had complained about the growing cost of defending the Berger Action, admitted that the purpose of the wasting settlement offer was to encourage Cushman to settle sooner rather than later.

60.     Illinois National's offer of a "wasting asset" settlement contribution thus constitutes not only an effort to avoid its obligations under the Policies, but a bad faith, impermissible attempt to place its own interests above those of its insured.

61.     Illinois National's conduct constitutes a gross disregard of Cushman's interests and is part of a broader pattern of behavior evincing a conscious and/or knowing indifference to Cushman's interests.

## IV.     ILLINOIS NATIONAL HAS A DEMONSTRATED PATTERN OF BELATEDLY ASSERTING COVERAGE DEFENSES TO OFFSET RISING DEFENSE COSTS

62.     This is not the first time that Illinois National has belatedly sought to revoke a prior admission that Cushman claims were covered when Illinois National no longer wanted to

pay the costs of defending those claims. Beginning in 2010, Cushman was named as a defendant in a number of actions alleging that it improperly used a form of valuation known as a "Total Net Value" ("TNV") appraisal method (the "TNV Claims"). As here, when Cushman notified Illinois National of those claims, Illinois National initially agreed that they were covered — under the same Policies as those at issue here — subject to the possible applicability of two exclusions. Illinois National subsequently abandoned any claim that those exclusions applied to the TNV Claims.

63.     Despite abandoning its original coverage defenses, in 2012, as the costs of defending the TNV Claims mounted, Illinois National issued a revised coverage position raising supposed defenses to coverage never mentioned in its 2010 acceptance of coverage, including asserting for the first time a right of recoupment under the Policies.

64.     When Cushman objected to Illinois National's belated change in position, Larry Fine, Illinois National's Global Head of Professional Liability Claims, told Cushman's in-house counsel, Stephanie Mercer, that Illinois National could do things "the easy way or the hard way." When Ms. Mercer refused to capitulate, in 2014, Illinois National issued yet another coverage position, asserting that coverage might also be barred under additional policy provisions not raised in either 2010 or 2012.

65.     In April 2018, the Court in the TNV Coverage Action ruled that none of the coverage defenses that Illinois National had raised were applicable, and awarded Cushman $38 million in defense costs and settlement fees.

66.     In October 2018, after losing on the issue of coverage, Illinois National attempted to recover prejudgment interest *from Cushman* for amounts that Illinois National had previously paid above its limits. This action was unsupported even by Illinois National's co-defendants –

Cushman's additional excess carriers – and was ultimately found not to be permitted under applicable law when Illinois National's motion was denied in June of 2019.

67.     Despite that ruling, Illinois National has not withdrawn any of its belated defenses to coverage in this case, including its assertion of a right to recoupment not provided by the Policies.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

68.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69.     The Policies constitute valid and enforceable contracts between Illinois National and Cushman, and Cushman is the named insured under the Policies.

70.     Cushman paid all premiums, provided prompt notice of its Claim, and otherwise performed all obligations required of it under the Policies.

71.     Under the terms of the Policies, Illinois National must pay for a claim that satisfies the insuring agreement of the Policies and is not otherwise excluded from coverage.

72.     As detailed above, the facts of the Claim come within the insuring agreement of the Policies and coverage for the defense and settlement of the Claim is not otherwise excluded in the Policies.

73.     In its 2013 Letter, Illinois National acknowledged its obligation to provide coverage for the allegations of fraudulent misrepresentation in the Underlying Complaint "until a final adjudication adverse to the Insured shall establish such act occurred and was the sole cause of damages."

74.     There has been no final adjudication adverse to Cushman establishing that Cushman engaged in a fraudulent act with respect to the Underlying Plaintiffs.

75.     No act by Cushman could ever be established as the sole cause of the Underlying Plaintiffs' damages.  In the Weinstein Actions, which were based on substantially the same facts that form the basis of the Berger Action, the jury found Weinstein and Chawla to be partially liable for the Underling Plaintiffs' damages, and entered an award of $33 million in favor of the Underlying Plaintiffs and against Weinstein and Chawla, among others.

76.     Illinois National has refused, and continues to refuse, to provide coverage for a settlement of the Berger Action, in breach of Illinois National's obligations under the Policies.

77.     Illinois National has no reasonable basis for denying coverage.  Illinois National knew and/or recklessly disregarded its lack of a reasonable basis for denying coverage.

78.     Illinois National's conduct constitutes a gross disregard of Cushman's interests and is part of a broader pattern of behavior evincing a conscious and/or knowing indifference to Cushman's interests.

79.     As a result of Illinois National's breach, Cushman has been harmed in an amount to be determined at trial, including by suffering consequential damages reasonably contemplated by the parties at the time of contracting.

## SECOND CAUSE OF ACTION

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

80.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 67 of this Complaint as if fully set forth herein.

81.     The Policies constitute valid and enforceable contracts between Illinois National and Cushman, and Cushman is the named insured under the Policies.

82.     Cushman paid all premiums, provided prompt notice of its Claim, and otherwise performed all obligations required of it under the Policies.

83.     Under the terms of the Policies, Illinois National must pay for a claim that satisfies the insuring agreement of the Policies and is not otherwise excluded from coverage.

84.     As detailed above, the facts of the Claim come within the insuring agreement of the Policies and coverage for the defense and settlement of the Claim is not otherwise excluded in the Policies.

85.     Illinois National has refused, and continues to refuse, to provide coverage for a settlement of the Berger Action, in breach of Illinois National's obligations under the Policies.

86.     Illinois National has no reasonable basis for denying coverage.  Illinois National knew and/or recklessly disregarded its lack of a reasonable basis for denying coverage.

87.     Illinois National's conduct constitutes a gross disregard of Cushman's interests and is part of a broader pattern of behavior evincing a conscious and/or knowing indifference to Cushman's interests.

88.     By raising new defenses to coverage four years into litigation, and by offering a settlement contribution designed to encourage Cushman to settle the Berger Action irrespective of reasonableness, Illinois National engaged in textbook bad faith conduct, including by impermissibly elevating its own economic interests above those of its insured, seeking to limit its potential liability, and operating in a fashion designed to send a message to its insured.

89.     As detailed herein, Illinois National has engaged in a pattern of egregious conduct with a conscious and knowing indifference to Cushman's interests.

90.     Through its conduct with respect to its handling of the Berger Action, Illinois National has breached the implied covenant of good faith and fair dealing in the Policies.

91.     Cushman has been damaged by Illinois National's breach of the implied covenant of good faith and fair dealing in an amount to be determined at trial.

92.     Cushman is entitled to consequential and/or punitive damages flowing from Illinois National's violation of the implied covenant of good faith and fair dealing, including, without limitation, prejudgment interest on the amount owed under the Policies, and the attorneys' fees, costs, and disbursements incurred by Cushman in enforcing its rights and as a consequence of Illinois National's bad faith delays in providing coverage for Cushman's claim.

93.     As a result of Illinois National's breach, Cushman has been harmed in an amount to be determined at trial, including by suffering consequential damages reasonably contemplated by the parties at the time of contracting.

## THIRD CAUSE OF ACTION

### (Declaratory Relief)

94.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 67 of this Complaint as if fully set forth herein.

95.     Pursuant to the terms of the Policies, Illinois National is obligated to pay, up to the limits of liability, for a Claim that satisfies the insuring agreements of the Policies and is not otherwise excluded from coverage.

96.     As detailed above, the facts of the Claim come within the insuring agreements of all of the Illinois National Policies and coverage for the Claim is not otherwise excluded in the Policies.

97.     Illinois National disputes its legal obligation to pay the Claim.

98.     Pursuant to 28 U.S.C. § 2201, Cushman is entitled to a declaration by this Court of Illinois National's obligations under the Policies.

99.     An actionable and justiciable controversy exists between Cushman and Illinois National concerning the proper construction of the Policies, and the rights and obligations of the parties thereto, with respect to the Claim for coverage for any settlement of the Berger Action.

100.     Pursuant to 28 U.S.C. § 2201, this Court should enter a declaratory judgment in favor of Cushman and against Illinois National, declaring that there is coverage available for Cushman's Claim under the Policies, and, pursuant to 28 U.S.C. § 2202, any other relief this Court deems proper.  Such a declaration would resolve the current controversy between Cushman and Illinois National.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

(a)     On the First Cause of Action, Plaintiff requests that the Court enter judgment against Illinois National, awarding Plaintiff damages in an amount to be determined at trial, but not less than $75,000, including consequential damages;

(b)     On the Second Cause of Action, Plaintiff requests that the Court enter judgment against Illinois National, awarding Plaintiff damages in an amount to be determined at trial, but not less than $75,000, plus consequential and punitive damages;

(c)     On the Third Cause of Action, Plaintiff requests that the Court enter a declaratory judgment in favor of Plaintiff against Illinois National, declaring that Illinois National is obligated to pay Plaintiff up to the applicable limits of the Policies for the Claim, including any settlement of the Berger Action;

(d)     On all Causes of Action, Plaintiff requests attorneys' fees, and pre- and post-judgment interest to the extent permitted by law; and

(e)     Additionally, Plaintiff requests such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated: July 17, 2019

CUSHMAN & WAKEFIELD OF PENNSYLVANIA, LLC

 */s/ Jason M. Bradford*
Jason M. Bradford

Robin Cohen*
Natasha Romagnoli*
Chelsea Ireland*
MCKOOL SMITH, P.C.
One Bryant Park, 47th Floor
New York, New York 10036
Tel:  (212) 402-9400
rcohen@mckoolsmith.com
nromagnoli@mckoolsmith.com
cireland@mckoolsmith.com
*pro hac vice* application to be filed

John H. Mathias, Jr.
Jason M. Bradford
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654
Tel:  (312) 222-9350
jmathias@jenner.com
jbradford@jenner.com

*Attorneys for Plaintiff Cushman & Wakefield of Pennsylvania, LLC*